THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

ASNALDO DEL VALLE GONZALEZ, and
CARMEN M. YANEZ DE GONZALEZ, as
Co-Personal Representative for THE ESTATE
OF YESSENIA COROMOTOA GONZALEZ
YANEZ, DECEASED on Behalf Of the Estate
and All Potential Beneficiaries and/or
Survivors,

    *Plaintiffs*,

vs.

AIRCRAFT GUARANTY HOLDINGS &
TRUST, LLC, Trustee, a Delaware Limited
Liability Company; THE NEW PIPER
AIRCRAFT, INC., a Delaware corporation; and
LYCOMING ENGINES, a division of AVCO
CORPORATION, a Pennsylvania corporation,

    *Defendants*.
_____/

**COMPLAINT FOR**
**WRONGFUL DEATH AND DAMAGES**

    Plaintiffs, Asnaldo del Valle Gonzalez and Carmen M. Yanez de Gonzalez, as Co-Personal Representatives of the Estate of Yessenia Coromotoa Gonzalez Yanez, deceased, on behalf of the Estate and all potential beneficiaries and/or survivors, sues the Defendants, Aircraft Guaranty Holdings & Trust, LLC, Trustee, a Delaware Limited Liability Company; The New Piper Aircraft, Inc., a Delaware corporation; and Lycoming Engines a Pennsylvania corporation and division of Avco Corporation, and allege as follows:

## **GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

1. This is an action under the Florida Wrongful Death Act and/or all other applicable law for damages in excess of $75,000.00, exclusive of costs, interest and attorneys' fees.

2. Jurisdiction is predicated upon diversity of citizenship pursuant to 28 U.S.C. §1332.

3. Venue is proper pursuant to 28 U.S.C. § 1391(a).

4. At all times material, Plaintiff, Asnaldo del Valle Gonzalez, a resident of Venezuela, was the father of Yessenia Coromotoa Gonzalez Yanez, deceased, and is, and/or will be the duly appointed co-Administrator, co-Executor and/or co-Personal Representative of the Estate of Yessenia Coromotoa Gonzalez Yanez, deceased.

5. At all times material, Plaintiff, Carmen M. Yanez de Gonzalez, a resident of Venezuela, was the mother of Yessenia Coromotoa Gonzalez Yanez, deceased, and is, and/or will be the duly appointed co-Administrator, co-Executor and/or co-Personal Representative of the Estate of Yessenia Coromotoa Gonzalez Yanez, deceased.

6. As co-Administrators, co-Executors and/or co-Personal Representatives of decedent's estate, Plaintiffs bring this action for the decedent's wrongful death in their individual and/or representative capacities, and on behalf of the following potential survivors and/or beneficiaries:

    a. Asnaldo del Valle Gonzalez, father of decedent;

    b. Carmen M. Yanzez de Gonzalez, mother of decedent;

    c. Joel Cruz Alexander Moreno Gonzalez, son of decedent;

    d. The Estate of Yessnia Coromotoa Gonzalez Yanez; and

   e. Any other individual entitled to recovery under applicable law.

7. At all times material, Defendant, Aircraft Guaranty Holdings & Trust, LLC ("Aircraft Guaranty"), was and is a Delaware limited liability company with its principal place of business in Houston, Texas.

8. At all times material, Defendant, Aircraft Guaranty, was and is a Delaware limited liability company, and is subject to jurisdiction in the State of Florida pursuant to Florida Statutes § 48.193; thus formal service of process may be effected by serving its Registered Agent, Connie L. Wood, 515 N. Sam Houston Parkway, East, Suite 305, Houston, Texas 77060.

9. At all times material, Defendant, Aircraft Guaranty, as Trustee under Continent Aircraft Trust No. 833, owned the Piper Navajo PA-31-310 aircraft subject of this litigation, Registration No. N6463L, a dangerous instrumentality.

10. At all times material, Defendant, The New Piper Aircraft, Inc. ("New Piper"), was and is a Delaware corporation with it principal place of business in the State of Florida.

11. At all times material, Francis J. Harkins, 2926 Piper Drive, Vero Beach, Florida 32960 is and was the Registered Agent for New Piper and is authorized to accept service of process pursuant to Florida Statutes § 48.091.

12. At all times material, Defendant, New Piper, was and is a manufacturer of airplanes, including the Piper Navaja PA-31-310 aircraft involved in this accident (hereinafter referred to as the "subject aircraft").

13. At all times material, Defendant, Lycoming Engines ("Lycoming"), was and a Pennsylvania corporation and a division of Avco Corporation, with its principal place of business

in Pennsylvania.  Lycoming was authorized to and doing business in the State of Florida.

14. At all times material, CT Corporation System, 1200 S. Pine Island Road, Plantation Florida 33324 is and was the Registered Agent for Lycoming and is authorized to accept service of process pursuant to Florida Statutes § 48.091.

15. At all times material, Defendant, Lycoming, was and is a manufacturer of airplane engines, including the Lycoming TI0-540 SER engine installed in the subject aircraft (hereinafter referred to as the "subject engine").

16. On April 28, 2008, a Piper Navajo PA-31-310, Registration No. N6463L, ("subject aircraft") with a Lycoming TI0-540 SER engine, ("subject engine') was enroute from Aereopuerto Internacional Del Centro Simon Bolivar, Maiqueta, Venezuela to Hato Airport, Curacao, Netherlands Antilles.

17. Shortly after takeoff, the pilot reported a loss of engine power and attempted to return to Aereopuerto Internacional Del Centro Simon Bolivar, Maiqueta.

18. During their return to Aereopuerto Internacional Del Centro Simon Bolivar, Maiqueta, the subject aircraft impacted and destroyed a residence in Catia La Mar, Maiqueta, Venezuela, occupied by decedent, decedent's three children and decedent's twin sister, causing severe injuries decedent's son and death to decedent, decedent's two daughters and decedent's twin sister.

19. On April 28, 2008, the subject aircraft failed in flight, proximately and directly due to the failures of its component parts, including its engine.

20. As a direct and proximate result of the crash and consequent death of the decedent, the Plaintiffs bring this action under the Florida Wrongful Death Act and/or whatever law this Court

deems appropriate and claims all damages to which the Estate, its survivors and/or beneficiaries may be entitled including, but not limited to:

    a.    pain and suffering of the decedent prior to death;

    b.    pain and suffering of the survivors, beneficiaries and heirs of decedent;

    c.    lost society, companionship, guidance and services of the decedent to the survivors, beneficiaries and heirs;

    d.    loss of support in money or in kind;

    e.    lost net accumulations;

    f.    lost value of life;

    g.    funeral expenses; and/or

    h.    any and all other damages to which Plaintiffs, the survivors and/or beneficiaries may be entitled which this Court may find applicable.

## COUNT I
## NEGLIGENCE AND VICARIOUS LIABILITY
## AGAINST AIRCRAFT GUARANTY

21. At all times material, Aircraft Guaranty, owned, leased, managed, maintained, operated and/or was the entity in control of the subject accident aircraft.

22. At all times material, Aircraft Guaranty, as the owner and/or operator of the aircraft, owed a duty to operate, control and maintain the subject aircraft, on the ground and in the air, with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind.

23. Furthermore, as the owner and/or operator of the subject aircraft, a dangerous instrumentality, Aircraft Guaranty was and are is for insuring that the subject aircraft was operated only by properly trained, competent and capable pilots and are directly, vicariously and/or otherwise

legally liable for all individuals involved in such operation.

24. Aircraft Guaranty knew or should have known that if the subject aircraft was not operated by properly trained and competent pilots, there would be an unreasonable risk of harm to persons operating, flying, and/or being flown aboard the subject aircraft.

25. At all times material, Aircraft Guaranty, by and through its agents, employees and representatives, including but not limited to the Pilot in Command, Mario Jose Donadi Gafaro, breached the duty of care owed to Plaintiffs and/or Plaintiffs' decedent in some or all of, but not limited to, the following ways:

    a. By operating and/or entrusting the subject aircraft to a Pilot in Command who was not fit, qualified or properly trained to perform flights of this type;

    b. By failing to operate the subject aircraft in a safe and competent manner, particularly given the Pilot in Command's knowledge of the aircraft's operational limitations, thereby resulting in the subject crash;

    c. By failing to maintain a proper and safe altitude and/or clearance with terrain and obstructions in violation of Federal Aviation Regulations;

    d. By failing to properly inspect, repair, modify, equip or service and/or otherwise maintain the aircraft in a safe and airworthy condition;

    e. By failing to follow proper pre-flight, in-flight and abnormal and/or emergency procedures during the operation of the subject aircraft.

26. At all times material, Aircraft Guaranty, by and through their agents, employees and/or representatives, including but not limited to the Pilot in Command, Mario Jose Donadi Gafaro, failed to exercise the requisite degree of care in ensuring the airworthiness and safety of the subject aircraft and operated the subject aircraft in a hazardous manner which negligently violated operative safety procedures and/or the applicable standard of care with disregard for the serious consequences of their negligence.

27. Aircraft Guaranty and its agents, employees and/or representatives, including but not limited to the Pilot in Command, Mario Jose Donadi Gafaro, and/or while acting within the course and scope of their employment and entrustment, *inter alia*, failed to protect against known risks and failed to take precautionary measures.

28. The crash of the subject aircraft on April 28, 2008 was proximately and/or legally caused by Aircraft Guaranty, by and through the negligent acts of its agents, employees, and/or representatives, including but not limited to the Pilot in Command, Mario Jose Donadi Gafaro. Furthermore, as the owner and operator of a dangerous instrumentality entrusted to its agents, employees, and/or representatives, including but not limited to the Pilot in Command, Mario Jose Donadi Gafaro regardless of his capacity, Aircraft Guaranty is directly, vicariously and/or otherwise legally liable for the negligent acts of Mario Jose Donadi Gafaro who was operating the subject aircraft as Pilot in Command with the owners' permission and consent.

29. As a direct and proximate cause of Aircraft Guaranty's negligence, Ms. Gonzalez Yanez suffered severe injuries and death when the subject aircraft crashed into her home on April 28, 2008.

30. As a direct and proximate result of the crash and consequent death of Plaintiffs'

decedent, Plaintiffs have been damaged pursuant to the Florida Wrongful Death Act and/or whatever law this Court finds applicable and claims all damages to which the Estate, the survivors, and/or beneficiaries may be entitled, including, as applicable law may provide, but not limited to:

    a.    pain and suffering of the decedent prior to death;

    b.    pain and suffering of the survivors, beneficiaries and heirs of decedent;

    c.    lost society, companionship, guidance and services of the decedent to the survivors, beneficiaries and heirs;

    d.    loss of support in money or in kind;

    e.    lost net accumulations;

    f.    lost value of life;

    g.    funeral expenses; and/or

    h.    any and all other damages to which Plaintiffs, the survivors and/or beneficiaries may be entitled which this Court may find applicable.

WHEREFORE, Plaintiffs, Asnaldo del Valle Gonzalez and Carmen M. Yanez de Gonzalez as co-Personal Representatives for the Estate of Yessenia Coromotoa Gonzalez Yanez, Deceased, demand judgment against Aircraft Guaranty for compensatory damages, costs and such other relief this Court deems appropriate. Plaintiffs further demand trial by jury of all issues triable as of right by jury.

## COUNT II
## NEGLIGENCE AGAINST NEW PIPER

31.     Prior to April 28, 2008, New Piper, planned, designed, certified, manufactured, assembled, modified, tested, inspected, serviced, repaired, marketed, sold and distributed the Piper Navajo PA-31-310 aircraft involved in the subject accident.

32.     At all times material, New Piper was under a duty to use reasonable care, and/or to exercise the highest degree of care in planning, designing, certifying, manufacturing, assembling, modifying, testing, inspecting marketing and distributing its aircraft, including the subject aircraft.

33.     At all times material, New Piper was under a further, continuing and/or on-going duty to, among other things:

   a. Plan, design, certify, manufacture, assemble, and modify the subject aircraft so that it could be safely flown within its operational parameters; and/or

   b. Test and/or inspect the subject aircraft for dangerous conditions that existed and/or were likely to exist on such aircraft; and/or

   c. Modify, service and/or repair dangerous conditions that were known or likely in the exercise of reasonable care to be known by New Piper; and/or

   d. Warn and/or advise users, including the decedent, of such dangerous conditions concerning and/or relating to the Piper aircraft that were known and should have been known to New Piper; and/or

   e. Prepare, supply and/or make available to users, maintenance companies and personnel and/or operators adequate manuals, service bulletins, engineering orders and/or instructions, limitations, advance warnings, data and/or other information concerning Piper aircraft and/or its dangerous characteristics so that owners, users and/or operators

could properly and safely operate, maintain, service, modify and/or repair the aircraft to keep it in a safe and airworthy condition and/or to prevent an unreasonable risk of harm to persons operating, flying, being flown on such aircraft and/or on the ground.

34. New Piper knew or in the exercise of reasonable care should have known that if the aircraft was not properly planned, designed, certified, manufactured, assembled, serviced, repaired, tested, inspected and distributed, or improperly modified or modified without proper supervision, certification and testing there would be an unreasonable risk of harm to persons aboard such aircraft and/or on the ground, particularly when such an aircraft is an inherently dangerous instrumentality.

35. At all times material, New Piper breached the aforementioned duties and/or negligently and carelessly failed to discharge the aforementioned duties by, among other things:

   a. Failing to design, certify, manufacture, modify, assemble the subject aircraft so that it could be safely operated within its design and operational parameters; and/or

   b. Failing to test and/or inspect the aircraft for dangerous conditions that existed and/or were likely to exist on such aircraft; and/or

   c. Failing to modify, service and/or repair dangerous conditions that were known or likely in the exercise of reasonable care to be known by New Piper; and/or

   d. Failing to warn, instruct and/or advise users, including the decedent, of such dangerous conditions concerning and/or relating to the subject aircraft that were known and should have been known to New Piper; and/or

   e. Failing to prepare, supply and/or make available to users, servicing companies and personnel, and/or operators adequate manuals, service bulletins,

    engineering orders and/or instructions, limitations, advance warnings, data and/or other information concerning the subject aircraft and/or its dangerous characteristics so that owners, users and/or operators could properly and safely operate, maintain, service modify and/or repair the aircraft to keep it in an airworthy and/or safe condition and/or to prevent an unreasonable risk upon persons operating, flying, being flown on such aircraft and/or on the ground.

36.  As a direct and proximate result of New Piper's negligence as described in the paragraphs above, the aircraft crashed into Plaintiffs' decedent's home, consequently causing the death of Plaintiffs' decedent, and Plaintiffs bring this action under the Florida Wrongful Death Act and/or whatever law this Court deems appropriate and claims all damages to which the Estate, survivors and/or beneficiaries may be entitled including, but not limited to:

  a.  pain and suffering of the decedent prior to death;

  b.  pain and suffering of the survivors, beneficiaries and heirs of decedent;

  c.  lost society, companionship, guidance and services of the decedent to the survivors, beneficiaries and heirs;

  d.  loss of support in money or in kind;

  e.  lost net accumulations;

  f.  lost value of life;

  g.  funeral expenses; and/or

  h.  any and all other damages to which Plaintiffs, the survivors and/or beneficiaries may be entitled which this Court may find applicable.

WHEREFORE, Plaintiffs, Asnaldo del Valle Gonzalez and Carmen M. Yanez de Gonzalez as co-Personal Representatives for the Estate of Yessenia Coromotoa Gonzalez Yanez, Deceased, demand judgment against New Piper for compensatory damages, costs and such other relief this Court deems appropriate. Plaintiffs further demand trial by jury of all issues triable as of right by jury.

## COUNT III
## STRICT LIABILITY AGAINST NEW PIPER

37. Prior to April 28, 2008, New Piper planned, designed, certified, manufactured, modified, assembled, inspected, tested, marketed, sold and distributed the subject aircraft in a defective and unreasonably dangerous condition.

38. New Piper has known that the aircraft would be used by others, without the opportunity for inspection, testing or knowledge of its design and manufacturing defects, and by placing it in the stream of commerce represented that the aircraft could be operated safely within its operational parameters and perform safely and as expected.

39. On April 28, 2008, the defective and unreasonably dangerous design, manufacture, modification and assembly of the subject aircraft was substantially unchanged from its condition at the time of manufacture, modification, assembly and sale, and was being used in the intended manner.

40. On April 28, 2008, while the subject aircraft was being operated as intended and because of the defective conditions suffered a failure of a critical flight systems which caused it to crash into the home of Plaintiffs' decedent, directly and proximately causing the untimely death of Yessenia Coromotoa Gonzalez Yanez.

41. As a direct and proximate result of New Piper's failure to warn of the defective and unreasonably dangerous condition of the subject aircraft and the consequent death of Plaintiffs' decedent, Plaintiffs bring this action under the Florida Wrongful Death Act and/or whatever law this Court deems appropriate and claims all damages to which the Estate, survivors and/or beneficiaries may be entitled including, but not limited to:

   a. pain and suffering of the decedent prior to death;

   b. pain and suffering of the survivors, beneficiaries and heirs of decedent;

   c. lost society, companionship, guidance and services of the decedent to the survivors, beneficiaries and heirs;

   d. loss of support in money or in kind;

   e. lost net accumulations;

   f. lost value of life;

   g. funeral expenses; and/or

   h. any and all other damages to which Plaintiffs, the survivors and/or beneficiaries may be entitled which this Court may find applicable.

WHEREFORE, Plaintiffs, Asnaldo del Valle Gonzalez and Carmen M. Yanez de Gonzalez as co-Personal Representatives for the Estate of Yessenia Coromotoa Gonzalez Yanez, Deceased, demand judgment against New Piper for compensatory damages, costs and such other relief this Court deems appropriate. Plaintiff further demands trial by jury of all issues triable as of right by jury.

## COUNT IV
## NEGLIGENCE AGAINST LYCOMING

42. At all times material, Lycoming designed, assembled, manufactured, inspected, tested, marketed and distributed the subject engine, and its related component parts, installed on the subject aircraft.

43. At all times material, Lycoming was and is engaged in the sale of the subject engine and its component parts and placed the same into the stream of commerce with full knowledge and intent that the subject engine and its component parts would be installed in the subject aircraft, which would then be used by purchasers, users and passengers.

44. At all times material, Lycoming knew or in the exercise of reasonable care, should have known that if the subject engine and/or its component parts failed, it would create an unreasonable risk of harm to owners/operators, to persons piloting and riding as passengers in the subject aircraft and to persons on the ground.

45. Lycoming was under a continuing and/or on-going duty to, among other things:

    a    Design, assemble and/or manufacture the subject engine and its component parts so that the subject aircraft could be safely operated; and/or

    b.    Test and/or inspect the subject engine and its component parts for dangerous conditions that existed and/or were likely to exist; and/or

    c.    Modify, service and/or repair dangerous conditions that were known or likely to be known by Lycoming in the exercise of reasonable care; and/or

    d.    Warn and/or advise owners/operators, pilots and passengers of such dangerous conditions concerning and/or relating to Lycoming's design, assembly, manufacture, testing and/or inspection of the subject engine and its component parts that were known and/or should have been known to Lycoming.

46.    Lycoming knew or should have known, that if Lycoming's design, assembly, manufacture, testing and/or inspection of the subject engine and its component parts was not properly executed there would be an unreasonable risk of harm to owners/operators and persons operating, flying, and/or being flown aboard the subject aircraft and/or persons on the ground.

47.    At all times material, Lycoming breached the aforementioned duties and/or negligently and carelessly failed to discharge the aforementioned duties by, among other things:

    a.    Failing to design, assemble and/or manufacture the subject engine and its component parts so that the subject aircraft could be safely operated; and/or

    b.    Failing to test and/or inspect the subject engine and its component parts for dangerous conditions that existed and/or were likely to exist in the subject aircraft; and/or

    c.    Failing to modify, service and/or repair dangerous conditions that were known or likely to be known by Lycoming in the exercise of reasonable care; and/or

    d.    Failing to warn owners/operators, pilots and passengers, of such dangerous conditions concerning and/or relating to Lycoming's design, assembly,

      manufacture, testing and/or inspection of the subject engine and its component parts that were known and/or should have been known to Lycoming.

48. As a direct and proximate cause of the Lycoming's negligence, the decedent suffered severe injuries and death when the subject aircraft crashed into her home on April 28, 2008.

49. As a direct and proximate result of the Lycoming's negligence and the consequent death of the decedent, Plaintiffs has been damaged and claim all damages to which they and the Estate, survivors and/or beneficiaries are entitled, including, as applicable law may provide, but not limited to:

  a. pain and suffering of the decedent prior to death;

  b. pain and suffering of the survivors, beneficiaries and heirs of decedent;

  c. lost society, companionship, guidance and services of the decedent to the survivors, beneficiaries and heirs;

  d. loss of support in money or in kind;

  e. lost net accumulations;

  f. lost value of life;

  g. funeral expenses; and/or

  h. any and all other damages to which Plaintiffs, the survivors and/or beneficiaries may be entitled which this Court may find applicable.

WHEREFORE, Plaintiffs, Asnaldo del Valle Gonzalez and Carmen M. Yanez de Gonzalez as co-Personal Representatives for the Estate of Yessenia Coromotoa Gonzalez Yanez, Deceased,

demands judgment against the Defendant Lycoming, for compensatory damages, costs and such other relief as this Court deems appropriate, and further demands trial by jury of all issues triable as of right by a jury.

## COUNT IV
## STRICT LIABILITY AGAINST LYCOMING

50. At all times material, Lycoming designed, assembled, manufactured, inspected, tested, marketed and/or distributed the subject engine and its component parts installed on the subject aircraft, all the time knowing that the equipment that it delivered would be used by members of the general public without testing or inspection.

51. Under the conditions then and there existing at the time of the sale, the subject engine and its component parts, was unfit for its intended use, unreasonably dangerous and defective; further, the instructions, warnings and other information pertaining to the subject engine and its component parts were inadequate and unreasonably dangerous, and Lycoming failed to give the decedent and others using the subject aircraft, adequate warning of the nature and extent of the aforesaid danger.

52. At all times material, Lycoming knew or in the exercise of reasonable care should have known that if the subject engine and its component parts failed, it would create an unreasonable risk of harm to owners/operators and persons piloting and riding as passengers in the subject aircraft and persons on the ground.

53. At all times material, the subject engine and its component parts were unaltered and were being used as intended and/or reasonably foreseeable by its manufacturer, Lycoming.

54. As a direct and proximate result of the defective design and/or manufacture of the subject engines installed on the subject aircraft, including but not limited to Lycoming's failure to warn, inform, train, instruct, and/or establish proper procedures regarding the operation, maintenance, and limitations of the subject engines and accompanying systems installed on the subject aircraft, the subject aircraft crashed on April 28, 2008 into decedent's home, resulting in the death of the decedent.

55. As a further direct and proximate result of Lycoming's failure to warn of the defective and unreasonably dangerous condition of the subject engines and component parts installed on the subject aircraft and the consequent death of the decedent, Plaintiffs has been damaged and claim all damages to which they, the Estate, the survivors and/or beneficiaries may be entitled, including as applicable law may provide, but not limited to:

    a. pain and suffering of the decedent prior to death;

    b. pain and suffering of the survivors, beneficiaries and heirs of decedent;

    c. lost society, companionship, guidance and services of the decedent to the survivors, beneficiaries and heirs;

    d. loss of support in money or in kind;

    e. lost net accumulations;

    f. lost value of life;

    g. funeral expenses; and/or

    h. any and all other damages to which Plaintiffs, the survivors and/or beneficiaries may be entitled which this Court may find applicable.

WHEREFORE, Plaintiffs, Asnaldo del Valle Gonzalez and Carmen M. Yanez de Gonzalez as co-Personal Representatives for the Estate of Yessenia Coromotoa González Yanez, Deceased, demand judgment against Defendant Honeywell for compensatory damages, plus interest and costs, and further demands trial by jury of all issues triable as of right by a jury.

DATED this 29th day of March, 2010.

>Respectfully submitted,
>
>PODHURST ORSECK, P.A.
>25 West Flagler Street, Suite 800
>Miami, Florida  33130
>(305) 358-2800 / Fax (305) 358-2382
>Email: rmcid@podhurst.com
>
>By:     /Ricardo M. Martinez-Cid
>        RICARDO M. MARTÍNEZ-CID
>        Fla. Bar No. 383988
>        ALEXANDER RUNDLET
>        Fla. Bar No. 0692301

I